United States v. Seymour is our next case for argument. May it please the court. Mr. Mitchell. Yes. Good morning, Your Honor. May it please the court. My name is Gregory Mitchell and I represent Mr. Keenan Seymour in this case, Judge. This is an appeal from a sentence that was imposed by Mr. Seymour, 180 months with respect to his conviction for the recall participation. I would like to address, I know I raised three separate issues in my brief, but I would like to argue or turn the court's attention first to what I consider the sort of the key argument raised, which is the disparity issue, which was argument number three. As I point out in the brief, Your Honors, I outlined that Mr. Seymour was one of 17 defendants charged in this case and and by no stretch of the imagination or anything was he a leader position, was he a middleman or anything else. In fact, as the record indicates that he had only been a member of this this gang that was charged in the recall for a period of three months, totally uncontested. The issue simply became what was he going to be held accountable for because of this murder that occurred November 24th of 2017, where he was a passenger in the car when the other person, another individual, pulled the gun out and started shooting and killed an individual. District Court was very clear with respect to three different types of theories of why he can hold him accountable, but notwithstanding that, I think that the crux of the argument really is that what would the other defendants involved that be participating in this, and if you look at the sentences that they received, whether or not the judge and the court... I don't understand this line of argument given the Supreme Court's holding in Gaul. The Supreme Court said that somebody sentenced at or below a sentencing range can't argue disparity because the guideline itself avoids the disparity. Calculating the correct guideline avoids that. That's one of the holdings of Gaul. The guideline range, in this case, is 240 months. Your client is sentenced to 180, below the guideline range. The United States might have been able to appeal and say the sentence was too low, but I don't see how, in light of the holding of Gaul, it can possibly be deemed too high. Well, Judge, my understanding in reading of Gaul and his progeny is that Gaul essentially says that what the court can do is that if it's within the guidelines or below, it's presumptively reasonable, but I think... And the court talked about the disparity issue. It said calculating the guidelines correctly has necessarily avoided violating the principle that you can't use unwarranted disparity. The Supreme Court said necessarily avoided that. I don't see how a court of appeals could say, notwithstanding that it's B6, we hold it's not compliant with B6. Well, this court in Solomon interpreted Gaul in a different way, Judge, and as I pointed out, and I think the government cited this case at page 24 of their brief. Essentially, as you as you correctly point out, Your Honor, that the sentence might be unreasonable if it creates an unwarranted disparity among similar defendants, but it also said a district court is entitled, if it wishes to apply the rule against unwarranted disparities, to co-defendant sentences, and that is specifically looking in reference to Gaul. We have said that a district court is entitled to consider this, but we have also held, consistent with Gaul, that if a district court doesn't do that, there's still no violation of the statute. Have you found any case in which this circuit has reversed, as a violation of B6, any sentence within or below the since 1984? No, Judge. Well, that's a big problem, is it not? It clearly is, Judge, and I think that the facts in this case, though, are uniquely different. What happens here is that the issue of the judge's finding in terms of the calculation, which comports to the issue of number three, obviously issue number two is the crux, which is are the guidelines calculations proper in terms of getting to the 240 that you mentioned, which is a statutory minimum. The judge had to first... Statutory maximum. Maximum. The judge had to first determine, of course, that he was accountable for this murder by the theories that he pointed out, and the crux of that issue deals with the evidence that was presented with respect to the murder, and as I pointed out in Section 2, is that there was clearly a question, and the judge acknowledged that, that clearly there's inconsistencies here. However, I believe by a preponderance of the evidence, he should be held responsible for it. My concern was is that when you look at the background and the criminal record and what he was found guilty of throughout, the sentence that was subsequently imposed to include the lower sentence doesn't even comport to what essentially the two work out to be in terms of, as he points out in the ruling, this decision about whether he should be held accountable to the murder is clearly the most important issue that the court had to decide, and the judge took much care in deciding that he would hold him accountable for that murder, but the argument still says that once you get to the point where you're going to get the calculation, you still look at the criminal history and the conduct of the other defendants in this case, and here we have 16 others, and as I pointed out, Judge, each and every one of those sounds like you're making the same kind of argument you would make to the sentencing judge, and it's a fine argument, but it's not an appellate argument. In regards to whether or not it's reasonable, if it turns out that the other defendants, especially when it comes to the question of why the lower sentences were imposed. As I said, this court has never held that a sentence within or just unwarranted disparity rule, and I can't imagine that this is the case where we would do it for the first time. Well, what I would, I would invite the court to look at the factual basis of the individuals who got a third of the sentence that he received, particularly the two females, and again, the judge was under the impression... It might be a good reason for the United States to appeal. I don't see how it's a good argument on behalf of Mr. Seymour. To put him in a position, Judge, different from the two individuals who received 60 months with essentially the same conduct, the same background, and like, seems to be completely against the issue of the disparity that the court points out, and the judge believed, the district court believed, or at least communicated as if he had no discretion, because this was part of a package deal. There was no issue raised that the guideline raised that was opposed to Mr. Seymour, and the sentence that was opposed was somehow different. The question became, did the district court have an opportunity to compare the guidelines that the sentence that he imposed for the other two individuals with Mr. Seymour? The judge seemed to think he couldn't. How would you answer the question that they are similar? Pardon me? How would you answer that they are similar? As the guideline points out, Judge, his criminal history was the same as them. The criminal conduct was essentially the same. In fact, theirs was more egregious, because they clearly had knowledge and took a weapon to a shooting, and in fact, they were found guilty of exactly the same thing. So the real question becomes, and as I argued in the district court... Was there any cooperation? Was there any... No, Judge. Did it suggest that they led earlier? Did they... I'm just trying to... I'm just asking what are the facts... There was no cooperation by the two females. What essentially happened, the person that that they had a relationship with, one of them, was a king of the conspiracy. So the government essentially gave a package three guilty pleas, essentially, by giving him 510 months in exchange for only giving the females that he was related to, despite their criminal history and their criminal conduct and everything else, 60 months. And there was no discussion of whether or not, by the district court, that was an appropriate sentence for them, or that somehow that the criminal conduct of Mr. Seymour was found guilty of was different than theirs. And so the comparison between the two, or at least the analysis that I felt was reasonable, was to look at what was given to these other individuals with the same, according to the guidelines, the same conviction. And the judge felt, and I believe what he ruled, is that I really can't look at that because that was part of a different deal. And Solomon doesn't seem to say that the district court has any limit in that regard. And as I pointed out to Judge Easterbrook, this court basically said the judge does have discretion to look behind it. In fact, I think the language reads, we are therefore open to all cases to an argument that a defendant's sentence is unreasonable because of a disparity with the sentence of a co-defendant. That's right in Sullivan. And the court, district court, decided, well, we can't because that's part of a deal and that's part of a package deal. And my argument was that... How do we distinguish it, I guess, from United States v. Solomon? Pardon me? How do we distinguish it from United States v. Solomon as to what the district court could do? There was no... How you would distinguish it here is that the judge believing that he did not have discretion to look at it because this was another deal. And so he wasn't going to evaluate or analyze why 60 months was appropriate or inappropriate in that case as opposed to 180 months with Mr. Seymour. And that's all I was asking for the judge to do. And the record points out that there was no, in that regard, no analysis at all. Thank you. Thank you, counsel. Mr. Temkin. May it please the court. Good morning, Your Honors. Eli Temkin for the United States. This court should affirm Mr. Seymour's sentence. I'll start with the co-defendant disparity point that Mr. Seymour addressed in his argument. Excuse me. The sentence Mr. Seymour received was 180 months. The guidelines set... The guidelines suggested a sentence of 240 months. And if not for the statutory maximum, the guidelines minimum would have been 324 months. Mr. Seymour was responsible for the murder of an innocent man. He received a sentence of 180 months well below the guidelines. That's not an unwarranted disparity. The district court properly calculated and considered the guidelines, but also considered the argument that Mr. Seymour raised about his co-defendants. There were 19 defendants in this case. 17 had been sentenced by the time Mr. Seymour came up. Looking at all the sentences, the sentence is well in line with the many sentences that Judge Simon saw in this case. Mr. Seymour has identified two co-defendants who he tries to compare himself to. There are a number of differences between Mr. Seymour and those two co-defendants. Most strikingly, the two of them pled almost two years before he did, and they pled in a package plea deal with Ralph Mendez Jr., who agreed to take a sentence of 510 months as part of this deal. These were stipulated sentences under the plea agreements that the district court was required to impose if it accepted those agreements. Mr. Seymour, in contrast, waited until a month before trial to plead guilty. Even at that point, he continued to dispute his responsibility for the murder at issue. So there are a number of reasons to distinguish Mr. Seymour from those two, but again, in context, against the 17 co-defendants who had already been sentenced, his sentence was right in line. Judge Simon, again, saw all these defendants. He was well-equipped to situate the sentence, and that's exactly what he did. Just briefly, we'll talk about the other two points. The district court had ample basis for its factual finding that Mr. Seymour knew about the gun that Justin and I had, and that he saw the gun. This court reviews only for clear error, and there's plenty of evidence to support that, including Mr. Seymour's own admissions. And the district court, second, properly attributed the murder to Mr. Seymour, given the court's findings, becomes relatively straightforward. This is exactly what Keenan Seymour signed up for and what he helped bring about. Unless there are any questions, the government asks that the court affirm. Thank you. Thank you very much. Case is taken under advisement.